United States Courts
Southern District of Texas
FILED

March 26, 2025

Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>**NIZAR ALI** (1)<br>**NAEEM ALI** (2)<br>**ISHAN DHUKA** (3)<br>**SAHIL KAROVALIA** (4)<br>**SAYED ALI** (5)<br>**AMER KHAN** (6)<br>**SARFAREZ MAREDIA** (7)<br>**ANABEL ELOISA GUEVARRA** (8)<br>**PRECELA SOLIS** (9)<br>**STEPHANIE HUERTA** (10)<br>**MARIA DELAROSA** (11)<br>**YOLANDA FIGUEROA** (12)<br>**CLAUDIA CALDERON** (13)<br>**VIVIANA ALVARADO** (14)<br>**LUCIA HERNANDEZ** (15)<br>**SHOAIB MAREDIA** (16) | CRIMINAL NO.:   **4:25-cr-0131**<br><br>**FILED UNDER SEAL** |

**INDICTMENT**

THE UNITED STATES GRAND JURY CHARGES:

**GENERAL ALLEGATIONS**

At all times relevant to this Indictment:

1.     Since in or about January 2019, **NIZAR ALI** has owned and operated numerous gambling locations ("game rooms") in Houston, Texas, and elsewhere within the Southern District of Texas.

2.     These game rooms, which operated in storefronts and other commercial locations, housed electronic gambling machines and operated as unlicensed casinos.  Patrons who visited

these game rooms used these electronic gambling machines to wager money in exchange for the opportunity to be awarded something of value either solely or partially by chance. Patrons who visited these game rooms were routinely awarded cash prizes that greatly exceeded the amounts wagered, including amounts ten times or more than the initial bets.

3.　　**NIZAR ALI**'s game rooms relied on various methods of concealment to mask their operations and **NIZAR ALI**'s involvement. These methods included nominal ownership by other investors; controlled access to game room floors by use of armed security; maintaining lists of vetted patrons; and the hiring of managers, supervisors, and other employees who oversaw the day-to-day operations of the game rooms. These methods allowed **NIZAR ALI** to maintain an arms-length relationship with his game rooms.

4.　　During this period, these game rooms were cash-heavy operations, and they employed a variety of individuals to operate them, including managers, money couriers, security personnel, and others.

5.　　**NIZAR ALI** was the owner/operator or partial owner/operator of approximately 30 game rooms operating in the Southern District of Texas. Although **NIZAR ALI** served as the owner/operator of these game rooms, he attempted to conceal his involvement from public and private scrutiny, including but not limited to employing managers to oversee the game rooms and renting commercial property in the names of third parties.

6.　　The establishments owned and operated by **NIZAR ALI** and others, as described below in Table 1, operated in largely the same manner. Each location allowed customers to gamble on physical, electronic gambling devices. Customers admitted to the game room premises manipulated the controls of these devices while setting amounts wagered. Wins or losses, determined by chance, were tracked electronically by a proprietary software system that was used

at each location.  These establishments were located as follows:

| TABLE 1 | |
|---|---|
| **Establishment** | **Location** |
| Monroe # 1 GR | 8495 Gulf Freeway, Houston, Texas |
| Fondren GR | 12335 Fondren #B, Houston, Texas |
| Lathrop GR | 7120 East Freeway, Houston, Texas |
| Uvalde GR | 13131 East Freeway, Houston, Texas |
| Gulf Bank GR | 1398 W. Gulf Bank #E, Houston, Texas |
| Crosstimbers GR | 903 Crosstimbers, Houston, Texas |
| Tidwell GR | 4590 West Tidwell, Houston, Texas |
| Baytown Gaming GR | 200 East Texas, Baytown, Texas |
| Harrisburg GR | 6418 Harrisburg, Houston, Texas |
| Casper GR | 104 Tidwell #A, Houston, Texas |
| El Camino/Clear Lake GR | 16602 Sealark Rd, Houston, Texas |
| Monroe # 2/Carshop GR | 9500 Monroe, Houston, Texas |
| Almeda GR | 12112 Alameda Rd #B7 & B8, Houston, Texas |
| Yellow Building GR | 3620 Tidwell, Houston, Texas |
| Simba/Scarsdale GR | 14222 Gulf Freeway, Houston, Texas |
| China Street/Market GR | 12534 Market, Houston, Texas |
| Aldine Mail GR | 1611 Aldine Mail Route, Houston, Texas |
| El Portal GR | 7026 Lawndale, Houston, Texas |
| Spinball Almeda GR | 2902 Almeda Genoa #C, Houston, Texas |
| Bissonnet Gaming GR | 7243 Bissonnet #A, Houston, Texas |
| Fuqua GR | 3310 W. Fuqua, Houston, Texas |
| Valero GR | 5101 Tidwell #100, Houston, Texas |
| Telephone GR | 5303 Telephone Rd, Houston, Texas |
| Gessner GR | 2543 Gessner Rd, Houston, Texas |
| Post Oak GR | 10912 S. Post Oak, Houston, Texas |
| Bissonnet #2 GR | 10880 Bissonnet #10, Houston, Texas |
| Homestead GR | 11510 Homestead #195, Houston, Texas |
| Little York GR | 2322 Little York, Houston, Texas |
| SH 249 GR | 14202 SH 249, Houston, Texas |
| Jones GR | 10618 Jones Rd, Houston, Texas |

7.    **NIZAR ALI** employed multiple individuals to work as managers of his game rooms.  In this role, managers supervised the gambling operations of the game rooms, negotiated employment issues and work schedules, and collected illegal proceeds.

3

8.      **NIZAR ALI** employed multiple individuals to work as money couriers for his game rooms. In this role, money couriers were responsible for collecting and transporting cash proceeds between game room locations and stash houses, as well as depositing cash proceeds into banks throughout Houston, Texas.

9.      **NAEEM ALI**, the eldest son of **NIZAR ALI**, was a money courier; he would collect cash proceeds from the illegal gambling businesses and deposit them into various bank accounts.

10.     **ISHAN DHUKA**, a game room operator with a fractional ownership interest in various game rooms, including the Aldine Mail GR, paid **NIZAR ALI** protection money to protect game rooms.  **ISHAN DHUKA** was believed to be a nephew-in-law of **NIZAR ALI.**

11.     **SAHIL KAROVALIA**, a game room operator with a fractional ownership interest in various game rooms, including Yellow Building GR, paid **NIZAR ALI** protection money to protect game rooms.  **SAHIL KAROVALIA** was believed to be a nephew-in-law of **NIZAR ALI.**

12.     **SAYED ALI** was a money courier, paid a percentage of game room profits to collect cash proceeds from various game rooms.  **SAYED ALI** was believed to be a cousin of **NIZAR ALI**.

13.     **AMER KHAN** was a money courier, paid a percentage of game room profits to collect cash proceeds from various game rooms. **AMER KHAN** was believed to be related to **NIZAR ALI**.

14.     **SARFAREZ MAREDIA** was a money courier, paid a percentage of game room profits to collect cash proceeds from various game rooms. **SARFAREZ MAREDIA** was believed to be related to **NIZAR ALI**.

15.     **ANABEL ELOISA GUEVARRA** was a money courier, paid a percentage of

4

game room profits to collect cash proceeds from various game rooms, and a game room manager, paid to manage and operate game rooms owned by **NIZAR ALI**, specifically Yellow Building GR. **ANABEL ELOISA GUEVARRA** was believed to be the girlfriend of **NIZAR ALI**.

16.    **PRECELA SOLIS** was a money courier, paid a percentage of game room profits to collect cash proceeds from various game rooms. **PRECELA SOLIS** was the daughter of **ANABEL ELOISA GUEVARRA**.

17.    **STEPHANIE HUERTA** was a game room manager, paid to manage and operate game rooms owned by **NIZAR ALI**, specifically Crosstimbers GR.

18.    **MARIA DELAROSA** was a game room manager, paid to manage and operate game rooms owned by **NIZAR ALI**, specifically Harrisburg GR and El Portal GR.

19.    **YOLANDA FIGUEROA** was a game room manager, paid to manage and operate game rooms owned by **NIZAR ALI**, specifically Monroe #1 GR.

20.    **CLAUDIA CALDERON** was a game room manager, paid to manage and operate game rooms owned by **NIZAR ALI**, specifically China Street/Market GR and Baytown Gaming GR.

21.    **VIVIANA ALVARADO** was a game room manager, paid to manage and operate game rooms owned by **NIZAR ALI**, specifically Simba/Scarsdale GR.

22.    **LUCIA HERNANDEZ** was a game room manager, paid to manage and operate game rooms owned by **NIZAR ALI**, specifically Monroe # 2/Carshop GR.

23.    **SHOAIB MAREDIA** was a money courier, paid a percentage of game room profits to collect cash proceeds from various game rooms. **SHOAIB MAREDIA** was believed to be related to **NIZAR ALI**.

24.    Law Enforcement Official-1 was a police officer with the Houston Police

5

Department, a governmental subdivision of the city of Houston, Texas.  During the calendar years 2017 through 2024, the City of Houston received more than $10,000 from the United States under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

25.     As a police officer with the Houston Police Department, Law Enforcement Official-1 had a duty to work with and for the public to faithfully enforce the laws and regulations of the City of Houston and the State of Texas.

26.     During the relevant periods described in this Indictment, Law Enforcement Official-1 also worked as a Task Force Officer and an undercover agent with Homeland Security Investigations in Houston, Texas.

## TEXAS STATE LAW GAME ROOM REGULATIONS

27.     Chapter 47 of the Texas Penal Code regulates the operation of game rooms in the State of Texas.  Specifically, Texas Penal Code § 47.01(3) prohibits the operation of a "gambling place," which is defined as "any real estate, building, room, tent, vehicle, boat, or other property whatsoever, one of the uses of which is the making or settling of bets, bookmaking, or the conducting of a lottery or the playing of gambling devices," and Texas Penal Code § 47.01(4) defines the possession of a "gambling device," defined as "any electronic, electromechanical, or mechanical contrivance not excluded under Paragraph (B) that for a consideration affords the player an opportunity to obtain anything of value, the award of which is determined solely or partially by chance, even though accompanied by some skill, whether or not the prize is automatically paid by the contrivance."  Texas Penal Code § 47.01(4)(B) excludes "any electronic, electromechanical, or mechanical contrivance designed, made, and adapted solely for bona fide amusement purposes if the contrivance rewards the player exclusively with noncash merchandise

6

prizes, toys, or novelties, or a representation of value redeemable for those items, that have a wholesale value available from a single play of the game or device of not more than 10 times the amount charged to play the game or device once or $5, whichever is less."

## HARRIS COUNTY GAME ROOM REGULATIONS

28.    Chapter 234 of the Harris County Local Government Code regulates game rooms in Harris County, Texas. Chapters Two and Three of that Chapter prohibit certain conduct including, but not limited to, operating a game room without a permit, failing to display a game room permit, exceeding the hours of operation, failing to keep certain employment and tax records, and issuing or requiring a game room membership.  A violation of these sections of the Harris County Local Government Code is a criminal offense.

29.    From in or about January 2019 through the date of this Indictment, **NIZAR ALI** operated approximately 30 game rooms that allowed customers to play various games on electronic gambling devices, such as 8-liner gambling machines, set up within the premises.  The patrons of these game rooms handed cash to attendants and could place bets while playing games on various electronic gambling devices.  When customers were done playing, customers then redeemed any winnings amassed while gambling, which were paid out in cash by game room attendants. **NIZAR ALI** worked with other individuals, known and unknown to the Grand Jury, to conduct, finance, manage, supervise, direct or own a gambling business consisting of a network of establishments in the Southern District of Texas.

30.    At all periods relevant to this Indictment, the premises identified above in Table 1 employed numerous individuals working in furtherance of the larger gambling business owned and operated by **NIZAR ALI** and others known and unknown to the Grand Jury.

31.    At all periods relevant to this Indictment, the gambling business overseen by

**NIZAR ALI** and others known and unknown to the Grand Jury, involved five or more individuals who conducted, financed, managed, supervised, directed, or owned all or part of their gambling business.

32.    At all periods relevant to this Indictment, the premises referenced in this Indictment had been or remained in continuous operation for a period exceeding 30 days or had gross revenues of more than $2,000 on a single day.

33.    At all periods relevant to this Indictment, the premises referenced in this Indictment had been operating in violation of various laws of the political subdivision of Harris County, Texas, contained in the Harris County Game Room Regulations, in which political subdivision said business was conducted.

## <u>COUNT ONE</u>
(Conspiracy)

34.    The allegations in Paragraphs 1 through 33 of this Indictment are incorporated and re-alleged as if fully set forth herein.

35.    On a date unknown but at least by or about January 2019, and continuing through on or about the date of this Indictment, in the Southern District of Texas, and elsewhere within the jurisdiction of the Court, defendants,

**NIZAR ALI,**
**NAEEM ALI,**
**ISHAN DHUKA,**
**SAHIL KAROVALIA,**
**SAYED ALI,**
**AMER KHAN,**
**SARFAREZ MAREDIA,**
**ANABEL ELOISA GUEVARRA,**
**PRECELA SOLIS,**
**STEPHANIE HUERTA,**
**MARIA DELAROSA,**
**YOLANDA FIGUEROA,**

**CLAUDIA CALDERON**,
**VIVIANA ALVARADO**,
**LUCIA HERNANDEZ**, and
**SHOAIB MAREDIA**,

together with others known and unknown to the Grand Jury, did knowingly combine, conspire, confederate, and agree with each other to:

       a.     knowingly conduct, finance, manage, supervise, and direct an illegal gambling business in violation of the laws of the State of Texas and Harris County, Texas, which involved five or more persons who conducted, financed, managed, supervised, and directed such business and such business remained in substantially continuous operation for a period in excess of thirty days, and had a gross revenue in excess of $2,000 in any single day, in violation of 18 U.S.C. § 1955;

       b.     corruptly give, offer, and agree to give things of value to Law Enforcement Official-1, an agent of the City of Houston, Texas, and the Houston Police Department, with the intent to influence and reward Law Enforcement Official-1 in connection with any business, transaction, and series of transactions of the City of Houston, Texas, and the Houston Police Department involving anything of value $5,000 or more, that is, for protecting a series of illegal gambling premises in the greater Houston area and their involvement in the operation of those premises, in violation of Title 18, United States Code, Section 666(a)(2); and

       c.     knowingly use and cause to be used a facility in interstate and foreign commerce, namely a telephone and a wire and electronic communication, (i) with the intent to distribute the proceeds of and (ii) with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, (a) namely, bribery, in violation of Article XVI, § 41 of the Texas Constitution and Texas Penal Code 36.02, and (b) intentionally conducting, financing, managing, supervising, directing, and owning all or

part of an illegal gambling business, involving the operation of electronic gambling devices in violation of the laws of the State of Texas, Texas Penal Code, Chapter 47, and (c) intentionally conducting or attempting to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity in violation of Title 18, United States Code, Sections 1956 and 1957, and thereafter performed and attempted to perform an act to promote, manage, establish and carry on, and to facilitate the promotion, management, establishment, and carrying on of the above unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(1) and (3).

### *PURPOSE*

36.     It was a purpose of the conspiracy for the defendants to conduct, finance, manage, supervise, direct, and own illegal gambling businesses via a series of game rooms operating in and around Houston, Texas.

37.     It was further a purpose of the conspiracy for **NIZAR ALI** to obtain protection for the illegal gambling business, to wit, to receive notification of enforcement action against game room premises or the defendants from public officials, namely law enforcement authorities, in exchange for bribe payments.

38.     It was further a purpose of the conspiracy for **NIZAR ALI**, to charge a fee to other conspirators who possessed ownership or financial interests in illegal gambling businesses to obtain protection, to wit, to receive notification of enforcement action against game room premises or the others from public officials, namely law enforcement authorities, in exchange for bribe payments.

39.     It was further a purpose of the conspiracy for **NIZAR ALI** to advise and pressure

10

law enforcement officials to target the operations of rival game room owner/operators in the greater Houston area for raids and interdiction.

40.     It was further a purpose of the conspiracy for defendants to transport cash proceeds between game room locations, as well as to banks and other locations in Houston, Texas, for the purpose of laundering such cash proceeds.

41.     It was further a purpose of the conspiracy for defendants to communicate via telephone regarding their illegal enterprise.

### *MANNER AND MEANS*

42.     The conspiracy used the following manner and means, among others:

43.     **NIZAR ALI**, and others known and unknown to the Grand Jury, gave, offered, and agreed to give and offer, things of value, including cash bribes and jewelry, in return for Law Enforcement Official-1's agreement to provide protection for them and the game room premises under their control, to wit, Law Enforcement Official-1's agreement to enter the location information of game room premises into a local law enforcement deconfliction system, to advise them of imminent law enforcement action against themselves or their game room premises, and to pressure other law enforcement officials to target rival game rooms for law enforcement action.

44.     The defendants coordinated their gambling business, bribery activities, and money laundering using cellular phones and in-person meetings.  **NIZAR ALI** concealed the scheme by, among other things, encouraging the payment of bribes to public officials, such as Law Enforcement Official-1, in cash, and meeting with Law Enforcement Official-1 in person, rather than via telephone, to discuss protection strategies.

## *OVERT ACTS*

45.     In furtherance of the conspiracy, and to effect its objects thereof, the defendants and others, both known and unknown to the Grand Jury, committed and caused to be committed, the following overt acts, among others, in the Southern District of Texas and elsewhere within the jurisdiction of the Court:

a.      On or about and between January 1, 2019, and April 12, 2019, **NIZAR ALI** sent multiple text messages to a member of the Houston Police Department requesting to meet for the purpose of soliciting favors related to his illegal game room business.

b.      On or about November 7, 2019, **NIZAR ALI** and Law Enforcement Official-1 met for the first time, and **NIZAR ALI** told Law Enforcement Official-1 that the two could work together.

c.      On or about November 19, 2019, **NIZAR ALI** met with Law Enforcement Official-1 and offered to pay Law Enforcement Official-1 $1000 a week for investigating and closing competing game rooms.

d.      On or about December 13, 2019, **NIZAR ALI** met with Law Enforcement Official-1 and paid Law Enforcement Official-1 $1,000 cash.

e.      On or about February 27, 2020, **NIZAR ALI** met with Law Enforcement Official-1 to discuss Law Enforcement Official-1 continuing to protect **NIZAR ALI**'s game rooms from law enforcement interference and paid Law Enforcement Official-1 another $1000 cash.

f.      On or about February 29, 2020, **NIZAR ALI** texted Law Enforcement Official-1 a list of six game room locations that he wanted protected from law enforcement.

g.      On or about February 23, 2023, **NIZAR ALI** met with Law Enforcement Official-1 and handed Law Enforcement Official-1 a white plastic bag that contained several bundles of

rubber-banded cash totaling $20,000.

h.      On or about February 23, 2023, **NIZAR ALI** texted Law Enforcement Official-1 an updated list of 18 game room locations that he wanted protected from law enforcement.

i.      On or about December 5, 2024, **NIZAR ALI** met with Law Enforcement Official-1 and discussed game room protection; **NIZAR ALI** then handed Law Enforcement Official-1 $40,000 cash and a Rolex watch.

j.      On or about January 7, 2023, **STEPHANIE HUERTA** managed the Crosstimbers GR, directing the activities of game room employees.

k.      On or about March 23, 2023, **NIZAR ALI** telephoned **CLAUDIA CALDERON** and told **CLAUDIA CALDERON** that he spoke to Law Enforcement Official-1 about protecting her game room.

l.      On or about March 23, 2023, **NIZAR ALI** telephoned **SAYED ALI** and discussed collecting proceeds of illegal gambling from various game rooms.

m.      On or about March 25, 2023, **NIZAR ALI** telephoned **SAYED ALI** and discussed a collection of money from the illegal gambling machines totaling over $22,000.

n.      On or about March 29, 2023, **NIZAR ALI** texted Law Enforcement Official-1 about public complaints at one of his game rooms.

o.      On or about March 31, 2023, **NIZAR ALI** telephoned **STEPHANIE HUERTA** and discussed the monthly profit from a game room, which totaled more than $206,000.

p.      On or about April 1, 2023, **NIZAR ALI** telephoned **ANABEL ELOISA GUEVARRA** and discussed the money removed from the gaming machines at a game room, which totaled more than $100,000.

q.      On or about April 8, 2023, **NIZAR ALI** telephoned **LUCIA HERNANDEZ** and

13

directed her to hang a sign in her game room that says there is a $2,500 payout per jackpot.

r.     On or about April 15, 2023, **NIZAR ALI** telephoned **CLAUDIA CALDERON**, and they discussed her planting drugs inside a competing game room and calling the police.

s.     On or about June 13, 2023, **LUCIA HERNANDEZ** managed the Monroe # 2/Carshop GR, directing the activities of game room employees.

t.     On or about July 6, 2023, **ANABEL ELOISA GUEVARRA** managed Yellow Building GR, directing the activities of game room employees.

u.     On or about July 29, 2023, **ANABEL ELOISA GUEVARRA** telephoned **NIZAR ALI** and discussed game room revenue, which totaled $165,000.

v.     On or about July 31, 2023, **NAEEM ALI** met with **AMER KHAN** to exchange game room proceeds.

w.     On or about August 2, 2023, **MARIA DELAROSA** dropped off game room proceeds at El Portal GR.

x.     On or about August 2, 2023, **MARIA DELAROSA** telephoned **NIZAR ALI** and discussed game room payouts.

y.     On or about August 3, 2023, **NIZAR ALI** telephoned **SAYED ALI** and discussed a VIP gambler who won a $6,000 jackpot but paid him a maximum of $5,000.

z.     On or about August 6, 2023, **NIZAR ALI** telephoned **LUCIA HERNANDEZ** and directed her to meet with **NAEEM ALI** to transfer game room proceeds on August 7, 2023.

aa.     On or about August 7, 2023, **LUCIA HERNANDEZ** met with **NAEEM ALI** at El Portal Nightclub to transfer game room proceeds.

bb.     On or about August 7, 2023, **VIVIANA ALVARADO** called **NAEEM ALI** to arrange for the transfer of game room proceeds.

cc.     On or about August 7, 2023, **VIVIANA ALVARADO** met with **NAEEM ALI** at El Portal Nightclub to transfer game room proceeds.

dd.     On or about August 14, 2023, **NIZAR ALI** telephoned **NAEEM ALI** to arrange for **NAEEM ALI** to collect cash from various game room managers.

ee.     On or about August 15, 2023, **NAEEM ALI** collected multiple game room proceeds and ledgers from game room managers.

ff.     On or about August 25, 2023, **MARIA DELAROSA** telephoned **NIZAR ALI** to discuss a game room's daily revenues.

gg.     On or about September 11, 2023, **SAHIL KAROVALIA** delivered game room proceeds to **SAYED ALI**.

hh.     On or about October 2, 2023, **AMER KHAN** transported ledgers and game room proceeds to his residence.

ii.     On or about January 29, 2024, **NIZAR ALI** telephoned **ISHAN DHUKA** and discussed depositing game room proceeds in a bank.

jj.     On or about January 31, 2024, **ANABEL ELOISA GUEVARRA** telephoned **SAYED ALI** to discuss the operation and profit of Yellow Building GR.

kk.     On or about February 1, 2024, **NIZAR ALI** telephoned **SHOAIB MAREDIA** and **SARFARAZ MAREDIA** to discuss game room expenses, including rent, utilities, and protection.

ll.     On or about February 1, 2024, **NIZAR ALI** telephoned **YOLANDA FIGUEROA** to discuss complaints that Monroe #1 GR is running out of money; **YOLANDA FIGUEROA** explained that she is not running out of money but only pays the patrons half their winnings.

mm.     On or about February 2, 2024, **NIZAR ALI** telephoned **MARIA DELAROSA** and discussed the readings at El Portal GR, where the proceeds were more than

$29,000.

nn.     On or about February 3, 2024, **NIZAR ALI** telephoned **SAYED ALI** to discuss $15,000 that was paid for game room protection.

oo.     On or about February 3, 2024, **NIZAR ALI** telephoned **SARFARAZ MAREDIA** and **SHOAIB MAREDIA** to tell them the proceeds were short at Gessner GR.

pp.     On or about February 3, 2024**, NIZAR ALI** telephoned **SHOAIB MAREDIA** to discuss accounting errors made by a game room manager.

qq.     On or about February 4, 2024, **SARFARAZ MAREDIA** telephoned **NIZAR ALI** to discuss finishing the construction of a new game room.

rr.     On or about February 6, 2024, **SAHIL KAROVALIA** telephoned **AMER KHAN** and directed him to pickup two packages of game room proceeds at Lathrop GR.

ss.     On or about February 6, 2024, **ANABEL ELOISA GUEVARRA** telephoned **NIZAR ALI**, and they discussed **NIZAR ALI** selling Law Enforcement Official-1's protection to other game room owners in hopes of collecting $100,000 in protection payments a month.

tt.     On or about February 8, 2024, **ISHAN DHUKA** telephoned **NIZAR ALI** and discussed Monroe #1 GR being raided by law enforcement.

uu.     On or about February 9, 2024, **SAHIL KAROVALIA** telephoned **SAYED ALI** and inquired how Monroe #1 GR was busted when they were paying for protection from police.

vv.     On or about February 9, 2024, **SAYED ALI** telephoned **AMER KHAN** and they discussed the protection money that **NIZAR ALI** charged, $10,000 or $15,000.

ww.     On or about February 9, 2024, **SARFARAZ MAREDIA** telephoned **NIZAR ALI** and told **NIZAR ALI** that the total cash collected from a game room was $12,000.

xx.     On or about February 9, 2024, **NIZAR ALI** telephoned **PRECELA SOLIS** and

complained about **SAHIL KAROVALIA** not collecting money from the game rooms, which allowed constables to seize $24,000.

yy.    On or about February 11, 2024, **NIZAR ALI** telephoned **CLAUDIA CALDERON** and discussed **CLAUDIA CALDERON**'s game room, which made $9,800 in profit that evening.

zz.    On or about February 12, 2024, **STEPHANIE HUERTA** telephoned **ISHAN DHUKA** to request a loan because her game room paid out two jackpots already, and they only had $9,125 left in reserves.

aaa.    On or about February 13, 2024, **NIZAR ALI** telephoned **AMER KHAN** and they discussed game room proceeds from the previous day being short.

bbb.    On or about February 15, 2024, **ISHAN DHUKA** telephoned **SAHIL KAROVALIA** and discussed a police raid on Yellow Building GR and the $7,000 protection money that they pay to **NIZAR ALI**.

ccc.    On or about February 15, 2024, **ISHAN DHUKA** telephoned an unknown game room manger to discuss the concerns of hiring so many illegal aliens in their game room.

ddd.    On or about February 15, 2024, **PRECELA SOLIS** telephoned **SAYED ALI** to notify him that a patron won a $4,118 jackpot on a game room machine.

eee.    On or about February 21, 2024, **NIZAR ALI** telephoned **SHOAIB MAREDIA** and **SARFARAZ MAREDIA** to discuss game room paperwork and employee difficulties.

fff.    On or about February 21, 2024, **NIZAR ALI** telephoned **SARFARAZ MAREDIA** and notified him that he wants to give **SARFARAZ MAREDIA** and **SHOAIB MAREDIA** game rooms to manage.

ggg.    On or about February 21, 2024, **ANABEL ELOISA GUEVARRA** telephoned **NIZAR ALI** and discussed **NIZAR ALI** stepping aside from the game room business, but still

collecting protection money from managers.

hhh.     On or about February 23, 2024, **NIZAR ALI** called **SARFARAZ MAREDIA,** and they discussed the hiring of a new game room employee.

iii.     On or about January 27, 2025, **PRECELA SOLIS** collected game room proceeds from three game rooms owned by **NIZAR ALI**: Monroe #2/Carshop GR; Spinball Almeda GR; and Harrisburg GR.

jjj.     On or about January 27, 2025, **ANABEL ELOISA GUEVARRA** collected game room proceeds from two game rooms owned by **NIZAR ALI**: Fondren GR and Gulf Bank GR.

46.     All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH THIRTY-FOUR
### (Federal Program Bribery)

47.     The allegations in Paragraphs 1 through 33 of this Indictment are incorporated and re-alleged as if fully set forth herein.

48.     On or about the following approximate dates, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, defendant,

**NIZAR ALI**,

did knowingly and corruptly give, offer, and agree to give a thing of value to Law Enforcement Official-1, that is the cash bribe payments for the amounts and on the dates listed below, with the intent to influence and reward Law Enforcement Official-1, an agent of the city of Houston and the Houston Police Department, a local government and an agency thereof, each of which received benefits exceeding $10,000 under federal programs involving grants, contracts, subsidies loans, guarantees, insurance, and other forms of Federal Assistance during each of the calendar years from 2019-2025 inclusive, in connection with any business, transaction, and series of transactions

of the City of Houston and the Houston Police Department involving something of value of $5,000

or more, that is notification of and protection from law enforcement actions against gambling

operations occurring at game rooms owned and operated by **NIZAR ALI**.

| Count | Date of Payment | Payment Amount |
|---|---|---|
| 2 | December 13, 2019 | $1,000 |
| 3 | February 4, 2020 | $500 |
| 4 | February 27, 2020 | $1,000 |
| 5 | March 25, 2020 | $2,000 |
| 6 | April 29, 2020 | $1,480 |
| 7 | May 29, 2020 | $2,000 |
| 8 | June 25, 2020 | $2,000 |
| 9 | August 5, 2020 | $2,000 |
| 10 | October 27, 2020 | $2,000 |
| 11 | December 15, 2020 | $2,000 |
| 12 | February 24, 2021 | $3,000 |
| 13 | March 31, 2021 | $3,000 |
| 14 | June 8, 2021 | $5,000 |
| 15 | September 16, 2021 | $6,900 |
| 16 | December 15, 2021 | $10,000 |
| 17 | February 25, 2022 | $10,000 |
| 18 | May 20, 2022 | $20,000 |
| 19 | August 16, 2022 | $20,000 |
| 20 | November 3, 2022 | $20,100 |
| 21 | January 5, 2023 | $20,000 |
| 22 | February 23, 2023 | $20,000 |
| 23 | April 6, 2023 | $20,000 |
| 24 | June 16, 2023 | $20,000 |
| 25 | August 3, 2023 | $30,000 |
| 26 | October 5, 2023 | $30,000 |
| 27 | December 7, 2023 | $30,100 |
| 28 | February 6, 2024 | $40,000 |
| 29 | April 5, 2024 | $40,000 |
| 30 | June 13, 2024 | $40,000 |
| 31 | August 9, 2024 | $40,000 |
| 32 | October 4, 2024 | $40,000 |
| 33 | December 5, 2024 | $40,000 |
| 34 | February 5, 2025 | $40,000 |

49.    Each of these counts is a separate violation of Title 18, United States Code,

Sections 666(a)(2) and 2.

19

## COUNT THIRTY-FIVE
(Illegal Gambling Business)

50.     The allegations in Paragraphs 1 through 33 of this Indictment are incorporated and re-alleged as if fully set forth herein.

51.     On or about January 1, 2019, through on or about the date of this Indictment, in the Southern District of Texas, and elsewhere within the jurisdiction of the Court, defendants,

**NIZAR ALI,**
**NAEEM ALI,**
**ISHAN DHUKA,**
**SAHIL KAROVALIA,**
**SAYED ALI,**
**AMER KHAN,**
**SARFAREZ MAREDIA,**
**ANABEL ELOISA GUEVARRA,**
**PRECELA SOLIS,**
**STEPHANIE HUERTA,**
**MARIA DELAROSA,**
**YOLANDA FIGUEROA,**
**CLAUDIA CALDERON,**
**VIVIANA ALVARADO,**
**LUCIA HERNANDEZ**, and
**SHOAIB MAREDIA,**

did knowingly and intentionally conduct, finance, manage, supervise, direct, and own all or part of an illegal gambling business, involving the operation of electronic gambling devices in violation of the laws of the State of Texas, Texas Penal Code, Chapter 47, in which state said business was conducted and laws of the political subdivision of Harris County, the Harris County Game Room Regulations, in which political subdivision said business was conducted; which illegal gambling business involved, during the period aforesaid, five or more persons who conducted, financed, managed, supervised, directed and owned all or a part of such business; and which illegal gambling business remained in substantially continuous operation for a period in excess of thirty days, and had a gross revenue in excess of $2,000 in any single day.

52.     In violation of Title 18, United States Code, Sections 1955 and 2.

## COUNT THIRTY-SIX
(Interstate Travel in Aid of Racketeering)

53.     The allegations in Paragraphs 1 through 33 of this Indictment are incorporated and re-alleged as if fully set forth herein.

54.     On or about January 1, 2019, through on or about the date of this Indictment, in the Southern District of Texas, and elsewhere within the jurisdiction of the Court, defendants,

**NIZAR ALI,**
**NAEEM ALI,**
**ISHAN DHUKA,**
**SAHIL KAROVALIA,**
**SAYED ALI,**
**AMER KHAN,**
**SARFAREZ MAREDIA,**
**ANABEL ELOISA GUEVARRA,**
**PRECELA SOLIS,**
**STEPHANIE HUERTA,**
**MARIA DELAROSA,**
**YOLANDA FIGUEROA,**
**CLAUDIA CALDERON,**
**VIVIANA ALVARADO,**
**LUCIA HERNANDEZ, and**
**SHOAIB MAREDIA,**

did knowingly use and cause to be used a facility in interstate and foreign commerce, namely a mobile telephone and a wire and electronic communication, (i) with the intent to distribute the proceeds of, and (ii) with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, namely, (a) bribery, in violation of Article XVI, § 41 of the Texas Constitution, and Texas Penal Code 36.02, (b) intentionally conducting, financing, managing, supervising, directing, and owning all or part of an illegal gambling business, involving the operation of electronic gambling devices in violation of the laws of the State of Texas, Texas Penal Code, Chapter 47, and (c) and money laundering, in

21

violation of Title 18, United States Code, Sections 1956 and 1957, and thereafter performed and attempted to perform an act to promote, manage, establish and carry on, and to facilitate the promotion, management, establishment, and carrying on of the above unlawful activity.

55.     In violation of Title 18, Sections 1952(a)(1)(3) and 2.

## COUNT THIRTY-SEVEN
(Conspiracy to Launder Monetary Instruments)

56.     The allegations in Paragraphs 1 through 33 of this Indictment are incorporated and re-alleged as if fully set forth herein

57.     On or about January 1, 2019, through on or about the date of this Indictment, in the Southern District of Texas, and elsewhere within the jurisdiction of the Court, defendants,

**NIZAR ALI,**
**NAEEM ALI,**
**ISHAN DHUKA,**
**SAHIL KAROVALIA,**
**SAYED ALI,**
**AMER KHAN,**
**SARFAREZ MAREDIA,**
**ANABEL ELOISA GUEVARRA,**
**PRECELA SOLIS,**
**STEPHANIE HUERTA,**
**MARIA DELAROSA,**
**YOLANDA FIGUEROA,**
**CLAUDIA CALDERON,**
**VIVIANA ALVARADO,**
**LUCIA HERNANDEZ,** and
**SHOAIB MAREDIA,**

knowingly combined, conspired, confederated and agreed with each other and with other persons, both known and unknown to the Grand Jury, to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, the knowingly conducting, financing, managing, supervising, and directing an illegal gambling business in violation of Title 18, United

States Code, Section 1955, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and with the intent to promote the carrying on of the specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity.

58.    In violation of Title 18, United States Code, Section 1956(h).

## NOTICE OF INTENTION TO SEEK CRIMINAL FORFEITURE

### NOTICE OF CRIMINAL FORFEITURE
[18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c)]

59.    The allegations contained in Paragraphs 1 through 46 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C).

60.    Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), as a result of the commission of a violation of Title 18, United States Code, Section 371, as alleged in Count One of this Indictment, notice is given to the defendants,

**NIZAR ALI**,
**NAEEM ALI**,
**ISHAN DHUKA**,
**SAHIL KAROVALIA**,
**SAYED ALI**,
**AMER KHAN**,
**SARFAREZ MAREDIA**,
**ANABEL ELOISA GUEVARRA**,
**PRECELA SOLIS**,
**STEPHANIE HUERTA**,
**MARIA DELAROSA**,
**YOLANDA FIGUEROA**,
**CLAUDIA CALDERON**,

**VIVIANA ALVARADO**,
**LUCIA HERNANDEZ**, and
**SHOAIB MAREDIA**,

that the defendants shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Section 371.

## NOTICE OF CRIMINAL FORFEITURE
[18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c)]

61.    The allegations contained in Paragraphs 1 through 33 and 47 through 49 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C).

62.    Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), as a result of the commission of a violation of Title 18, United States Code, Section 666(a)(2), as alleged in Counts Two through Thirty-Four of this Indictment, notice is given to the defendant,

**NIZAR ALI**,

that the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Section 666(a)(1)(B).

## NOTICE OF CRIMINAL FORFEITURE
[18 U.S.C. §§ 981(a)(1)(C), 1955(d); 28 U.S.C. § 2461(c)]

63.    The allegations contained in Paragraphs 1 through 33 and 50 through 52 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 1955(d).

64.    Pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 1955(d) and Title 28, United States Code, Section 2461(c), as a result of the commission of a violation of

Title 18, United States Code, Section 1955, as alleged in Count Thirty-Five of this Indictment, notice is given to the defendants,

**NIZAR ALI,**
**NAEEM ALI,**
**ISHAN DHUKA,**
**SAHIL KAROVALIA,**
**SAYED ALI,**
**AMER KHAN,**
**SARFAREZ MAREDIA,**
**ANABEL ELOISA GUEVARRA,**
**PRECELA SOLIS,**
**STEPHANIE HUERTA,**
**MARIA DELAROSA,**
**YOLANDA FIGUEROA,**
**CLAUDIA CALDERON,**
**VIVIANA ALVARADO,**
**LUCIA HERNANDEZ,** and
**SHOAIB MAREDIA,**

that the defendants shall forfeit to the United States: (1) any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Section 1955; and (2) any property, including money, used in violation of Section 1955.

### NOTICE OF CRIMINAL FORFEITURE
[18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c)]

65.     The allegations contained in Paragraphs 1 through 33 and 53 through 55 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C).

66.     Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), as a result of the commission of a violation of Title 18, United States Code, Section 1952(a)(1)(3), as alleged in Count Thirty-Six of this Indictment, notice is given to the defendants,

**NIZAR ALI,**
**NAEEM ALI,**

**ISHAN DHUKA,**
**SAHIL KAROVALIA,**
**SAYED ALI,**
**AMER KHAN,**
**SARFAREZ MAREDIA,**
**ANABEL ELOISA GUEVARRA,**
**PRECELA SOLIS,**
**STEPHANIE HUERTA,**
**MARIA DELAROSA,**
**YOLANDA FIGUEROA,**
**CLAUDIA CALDERON,**
**VIVIANA ALVARADO,**
**LUCIA HERNANDEZ,** and
**SHOAIB MAREDIA,**

that the defendants shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Section 1952(a)(1)(3).

**Notice of Criminal Forfeiture**
[18 U.S.C. § 982(a)(1)]

67.     The allegations contained in Paragraphs 1 through 33 and 56 through 58 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(1).

68.     Pursuant to Title 18, United States Code, Section 982(a)(1), as a result of the commission of a violation of Title 18, United States Code, Section 1956, as alleged in Count Thirty-Seven of this Indictment, notice is given to the defendants,

**NIZAR ALI,**
**NAEEM ALI,**
**ISHAN DHUKA,**
**SAHIL KAROVALIA,**
**SAYED ALI,**
**AMER KHAN,**
**SARFAREZ MAREDIA,**
**ANABEL ELOISA GUEVARRA,**
**PRECELA SOLIS,**
**STEPHANIE HUERTA,**
**MARIA DELAROSA,**
**YOLANDA FIGUEROA,**

**CLAUDIA CALDERON**,
**VIVIANA ALVARADO**,
**LUCIA HERNANDEZ**, and
**SHOAIB MAREDIA**,

that the defendants shall forfeit to the United States any property, real or personal, involved in such

offense, or any property traceable to such property. Such property includes, but is not limited to:

A.      All funds held in American First National Bank account number ending in 7770 in

the name of Triumph Amusement LLC and **NAEEM ALI**;

B.      All funds held in American First National Bank account number ending 8343 in the

name of Zestful Kitchen LLC and **NAEEM ALI**;

C.      All funds held in Nizari Progressive Federal Credit Union (NPFCU) account

number ending in 5144 in the name of Soul Group Leaders LLC, dba: La Morelia Mercado and

**NAEEM ALI**;

D.      All funds held in ValueBank account number ending in 7351;

E.      All funds held in ValueBank account number ending in 7108;

F.      All funds held in Prosperity Bank account number ending in 3292 in the name of

**NAEEM ALI**;

G.      All funds held in JP Morgan Chase Bank account number ending in 9638;

H.      All funds held in NPFCU account number ending in 1730 in the name of **NAEEM**

**ALI**;

I.      All funds held in Schwab One account number ending in 9174 in the name of

**NAEEM ALI**;

J.      All funds held in Cadence Bank account number ending 4180 in the name of Aura

Ventures NN LLC and **NAEEM ALI**;

K.      All funds held in Cadence Bank account number ending in 9890;

L.    All funds held in Cadence Bank Certificate of Deposit number ending in 3214;

M.    All funds held in Wells Fargo Bank account number ending in 0163 in the name of **NIZAR ALI**;

N.    All funds held in Wells Fargo Bank account number ending in 2923;

O.    All funds held in Bank of America account number ending in 28512;

P.    All funds held in Wells Fargo Bank account number ending in 4822;

Q.    All funds held in NPFCU account number ending in 1537;

R.    All funds held in Capital One Bank account number ending in 2595;

S.    All funds held in Capital One Bank account number ending in 3158;

T.    All funds held in NPFCU account number ending in 8237;

U.    All funds held in NPFCU account number ending in 6919 in the name of **ISHAN DHUKA**;

V.    All funds held in Wells Fargo Bank account number ending in 1574 in the name of **ISHAN DHUKA**;

W.    All funds held in Capital One Bank account number ending in 6744 in the name of **ISHAN DHUKA**;

X.    All funds held in NPFCU account number ending in 5203 in the name of **SAHIL KAROVALIA**;

Y.    All funds held in NPFCU account number ending in 1536;

Z.    All funds held in Wells Fargo Bank account number ending in 4462 in the name of **SAHIL KAROVALIA**;

AA.    All funds held in NPFCU account number ending in 7925;

BB.    All funds held in JP Morgan Chase Bank account number ending in 3260;

28

CC.    All funds held in PromiseOne Bank account number ending in 1235;

DD.    The real property, including any improvements and appurtenances, located at 1342

Wild Mustang Trail, Richmond, Texas, and legally described as:

Lot Thirteen (13), Block Five (5), MANDOLA FARMS SECTION ONE, a subdivision in the City of Richmond, Fort Bend County, Texas, according to the map or plat thereof, recorded under Plat No. 20200181 of the Plat Records of Fort Bend County, Texas;

EE.    The real property, including any improvements and appurtenances, located at 1203

Grand Estate Drive, Richmond, Texas, and legally described as:

Lot 2, in Block 1 of LAKES OF WILLIAMS RANCH SEC. 1, a subdivision in Fort Bend County, Texas, according to the map or plat thereof recorded in Plat No. 20060158 of the Plat Records of Fort Bend County, Texas;

FF.    The real property, including any improvements and appurtenances, located at 918

Georgia Blue Drive, Richmond, Texas, and legally described as:

Lot 66, in Block 1 of HARVEST GREEN SEC 15, a subdivision in Fort Bend County, Texas, according to the map or plat thereof recorded in Plat No. 20170086 or the Plat Records of Fort Bend County, Texas;

GG.    The real property, including any improvements and appurtenances, located at 4311

Archer Meadow Lane, Sugar Land, Texas, and legally described as:

Lot 12, Block 1, Clements Crossing Section One, a subdivision to the city of Sugar Land, Fort Bend County, Texas, according to the map or plat thereof recorded in Plat Number 20170255 of the map and plat records, Fort Bend County, Texas;

HH.    The real property, including any improvements and appurtenances, located at 1318

Vinter Meadows Lane, Richmond, Texas, and legally described as:

Lot 25, Block 2, MANDOLA FARMS SECTION TWO, a subdivision in the City of Richmond, Fort Bend County, Texas, according to the map or plat thereof, recorded under Plat No. 20210153 of the Plat Records of Fort Bend County, Texas;

29

II.    The real property, including any improvements and appurtenances, located at 17611 Galloway Forest Drive, Richmond, Texas, and legally described as:

Lot eleven (11), in block two (2), of Aliana, section thirty-four (34), a subdivision in Fort Bend County, Texas, according to the map or plat thereof, recorded under plat number 20150319 of the plat records of Fort Bend County, Texas;

JJ.    The real property, including any improvements and appurtenances, located at 1602 Deep Lapis Circle, Rosenberg, Texas, and legally described as:

Lot 21, Block 2, Stonecreek Estates, Section Seven, an addition to Fort Bend County, Texas, according to the map or plat thereof recorded in Clerk's File No. 20210209, Plat Records, Fort Bend County, Texas;

KK.    The real property, including any improvements and appurtenances, located at 2003 Sapphire Pines Lane, Rosenberg, Texas, and legally described as:

Lot Twenty-Six (26), In Block Four (4), of STONECREEK ESTATES, SECTION ONE (1) AMENDING PLAT NO. 1, a subdivision In Fort Bend County, Texas, according to the map or plat thereof recorded In Plat No. 20160245 of the Plat Records of Fort Bend County, Texas;

LL.    The real property, including any improvements and appurtenances, located at 5643 SW 29th Street, El Reno, Oklahoma, and legally described as:

Part of the Northwest Quarter (NW/4) of Section Fourteen (14), Township Eleven (11) North, Range Eight (8) West of the Indian Meridian, Canadian County, Oklahoma, more particularly described as follows: Beginning at the NE corner of said NW/4; THENCE S 00°27'06" E, along the East line of said NW/4 a distance of 854.92 feet; THENCE N 89°12'14" W a distance of 939.95 feet; THENCE N 00°45'39" E a distance of 838.60 feet to a point on the North line of said NW/4, THENCE N 89°47'39" E along the North line a distance of 921.99 feet to the POINT OF BEGINNING.

MM.    The real property, including any improvements and appurtenances, located at 11615 Kirkshaw Drive, Richmond, Texas, and legally described as:

Lot 3, Block 2, of Aliana Sec 52, a subdivision in Fort Bend County, Texas, according to the map or plat thereof recorded in Plat Document No. 20170245, of the Plat Records, Fort Bend County, Texas;

NN.   Gray 2024 BMW X6 SUV, Texas L/P: 3S3S3S3; VIN: 5YM23ET09R9S41371;

OO.   Black 2023 BMW 760, Texas L/P: S3S3S3S; VIN: WBA33EJ04PCL68154;

PP.   Black 2023 Range Rover, Texas L/P: A7L8I6; VIN: SALK1BE70PA011973;

QQ.   Blue 2022 BMW M85, Texas L/P: GS16WP; VIN: WBAGV8C08NCK10438;

RR.   Black 2024 BMW X5 SUV, Texas L/P: M3SX5M; VIN: 5YM13ET01R9T91566;

SS.   Gray 2023 BMW X7, Texas L/P: N25A09M; VIN: 5UX33EM06P9R34146;

TT.   Blue 2021 Lincoln Aviator, Texas L/P: PYR3611; VIN: 5LM5J7WC8MGL17205;

UU.   Silver 2022 Ford F-150 Tremor, Texas L/P: RLV6717; VIN: 1FTEW1E80NFA11447;

VV.   Black 2023 Mercedes Benz GLE, Texas L/P: SNR0954; VIN: 4JGFD8KB3PA886813;

WW.   Black 2024 Cadillac Escalade, Texas L/P: VBY0196; VIN: 1GYS4SK92RR203236;

XX.   Black 2023 Audi SQ8, Texas L/P: TKZ6263; VIN: WA1CWBF17PD039219.

## Money Judgment

69.   Defendants are notified that, upon conviction, a monetary judgment may be imposed equal to the total value of the property subject to forfeiture. Such amount is estimated to be $22,000,000.

## Substitute Assets

70.   Defendants are notified that in the event that property subject to forfeiture, as a result of any act or omission any defendant,

(A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property that cannot be divided without difficulty,

it is the intent of the United States to seek forfeiture of any other property of the defendant up to

the total value of such property pursuant to Title 21, United States Code, Section 853(p),

incorporated by reference in Title 28, United States Code, Section 2461(c).

A TRUE BILL:

Original Signature on File

_____

FOREPERSON OF THE GRAND JURY

**NICHOLAS J. GANJEI**
UNITED STATES ATTORNEY

_____
S. Mark McIntyre
Assistant United States Attorney

_____
John Marek
Assistant United States Attorney

_____
Carolyn Ferko
Assistant United States Attorney